UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

WAYNE NICOLAISON,

Plaintiff,

v.

FRANK R. MILZAK (Sic) and
RICK HARRY,

Defendants.

CIVIL NO. 00-2654 (RHK/JMM)

REPORT AND RECOMMENDATION

Plaintiff is a patient, civilly committed as a psychopathic personality, who resides at the Minnesota Sexual Psychopathic Personality Treatment Center in Moose Lake, Minnesota. On December 7, 2000 he filed a Complaint alleging that Defendants, employees of the treatment center, violated his civil rights under 42 U.S.C. § 1983.

The matter is currently before the undersigned upon the Plaintiff's Motion for a Temporary Restraining Order or for a Preliminary Injunction [Docket No. 6]. Plaintiff is represented pro se; Defendants are represented by David A. Rowley, Esq., Assistant Minnesota Attorney General. The matter was referred to the undersigned by the District Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B). The following Report and Recommendation is made upon the written submissions.

Upon the following Findings of Fact/Report, it is recommended that Plaintiff's Motion for a Temporary Restraining Order or for a Preliminary Injunction [Docket No. 6] be denied.

MAR - 6 2001
CLERK

## FINDINGS OF FACT/REPORT

### Background

Plaintiff is a patient at the Minnesota Sexual Psychopathic Personality Treatment Center in Moose Lake, Minnesota ("the Moose Lake Center") as a result of having been committed as a psychopathic personality in 1992. [Docket No. 13, Rowley Aff., Ex. 1, Warrant and Receipt of Commitment]. The Moose Lake Center is a secure facility, established under Minnesota Statute § 246B.02 for the treatment of committed psychopathic persons.

The Moose Lake Center has a policy that allows for the use and possession of personal computers so long as they are not used in a "non-therapeutic, inappropriate, or illegal manner." The policy allows staff to examine a patient's personal computers for prohibited and counter-therapeutic material. As a consequence of misuse, a patient's use and possession may be restricted for a specified length of time. [Docket No. 14, Harry Aff., Exs. 1 and 2, Computer and Media Guidelines].

Plaintiff was transferred to the Moose Lake Center from another treatment center on October 9, 2000. Upon entry, Plaintiff's personal property, which included a personal computer, was inspected for contraband and counter-therapeutic materials. Through inspection staff discovered numerous violations of the Moose Lake Center's computer and media policies. [Docket No. 15, Dyson Aff., ¶¶ 8, 16]. As a result, Plaintiff's personal computer privileges were revoked for six months.

In his Complaint, filed on December 7, 2000, Plaintiff claims that Defendants "stole plaintiff's computer and accessories. . . without legal authority and without due process." [Docket No. 1]. In essence, Plaintiff's Complaint challenges the Moose Lake

Center's enforcement of its computer and media policies as violative of his rights to free speech under the First Amendment, the Due Process Clause, and the Double Jeopardy Clause. A Pre-trial Scheduling Order was issued on February 26, 2001 and the case shall be ready for trial at the conclusion of discovery or upon resolution of any dispositive motion, no later than August 1, 2001.

With the instant Motion, Plaintiff seeks a Temporary Restraining Order or a Preliminary Injunction, ordering the immediate return of Plaintiff's computer and related equipment. In his Complaint, Plaintiff seeks monetary and declaratory relief, but he does not specifically seek the return of his computer and equipment as requested by this Motion. His Complaint seeks $100,000 in compensatory damages and $100,000 in punitive damages. He also asks the Court to issue two Orders: 1) stating that Defendants have acted without authority and in violation of due process in the theft of his property and 2) requiring Defendants to provide a list of all confiscated patients' property in order to "document in record reimbursement of lost, stolen or destroyed items in Defendants' custody." [Docket No. 1, p. 4]. Thus, Plaintiff seeks preliminary injunctive relief with this Motion that he does not seek as permanent relief in his Complaint. Nonetheless, we construe the Motion as if such permanent relief were requested in the Complaint. Whether or not the computer and equipment will be permanently returned to Plaintiff will ultimately be determined when the case is decided on its merits. With this Motion, Plaintiff urges the immediate return of his computer and equipment on a temporary basis before the Court reaches the merits of the claim.

## Discussion

### I. PLAINTIFF IS NOT ENTITLED TO PRELIMINARY INJUNCTIVE RELIEF.

Under Dataphase Systems, Inc. v. CL Systems, Inc., 640 F.2d 109 (8th Cir. 1981), this Court must consider the following factors in analyzing whether to grant preliminary injunctive relief:

> (1) the threat of irreparable harm to the movant;
> (2) the state of balance between that harm and the injury that granting the injunction will inflict on other litigants;
> (3) the probability that the movant will succeed on the merits; and
> (4) the public interest.

Dataphase Systems, Inc., 620 F.2d at 114; Davis v. Francis Howell Sch. Dist., 104 F.3d 204, 205 (8th Cir. 1997). The party seeking the injunction has the burden of establishing these factors. Modern Computer Sys., Inc. v. Modern Banking Sys., Inc., 871 F.2d 734, 737 (8th Cir. 1989); Davis, 104 F.3d at 205-06. The grant of preliminary relief is within the discretion of the district court. Dataphase Sys., Inc., 640 F.2d at 114 n.8.

The threshold inquiry to a grant of preliminary injunctive relief is whether the movant has shown a threat of irreparable injury should the injunctive relief not be granted. The failure to show irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction. Gelco Corp. v. Coniston Partners, 811 F.2d 414, 418 (8th Cir. 1987); see also Bandag, Inc. v. Jack's Tire & Oil, Inc., 190 F.3d 924, 926 (8th Cir. 1999) (the basis of injunctive relief is irreparable harm and the inadequacy of legal remedies).

To satisfy the element of irreparable harm, a plaintiff must demonstrate a harm that lacks an adequate remedy at law. A harm that can be compensated by money damages should the moving party prevail in the action does not constitute irreparable

harm. See Adam-Mellang v. Apartment Search, Inc., 96 F.3d 297, 300 (8th Cir. 1996) (where a terminated employee sues for wrongful discharge, "temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury"). In addition, the moving party must demonstrate that the alleged harm is "likely to occur." The Eighth Circuit made the following statement regarding proof that harm will occur:

> Bare allegations of what is likely to occur are of no value since the court must decide whether the harm will in fact occur. The [plaintiff] must provide proof that the harm has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future.

Packard Elevator v. I.C.C., 782 F.2d 112, 115 (8th Cir. 1986).

In his moving papers, Plaintiff alleges an "irreparable harm in the form of theft" of his computer and equipment. [Docket No. 8, Decl. Nicolaison, ¶ 9]. In his Complaint, Plaintiff claims that Defendants "stole Plaintiff's computer and accessories, valued in excess of $6,000." [Docket No. 1, p. 4, ¶ 5]. Should Plaintiff succeed on this claim once the merits are reached, he has an adequate remedy at law in the form of money damages for any theft that he has suffered. Since there is an adequate remedy at law, a preliminary injunction is not warranted to prevent this alleged harm. See Adam-Mellang, 96 F.3d at 300.

Plaintiff further alleges that his "foremost injury is Plaintiff's inability to communicate properly with outside agencies to file complaints [and] communicate effectively with his attorney."[1] [Docket No. 8, Decl. Nicolaison, ¶ 9]. Plaintiff has failed to

---

[1] First, Plaintiff is represented pro se in this matter and, so far as this Court can tell, does not need to communicate with his attorney. Nonetheless, we address the allegation, mindful that Plaintiff may have other legal matters pending or may desire to contact an

carry his burden of proving that this harm is likely to occur. He may carry his burden by proving that the harm has occurred in the past and is likely to occur again, or that it is certain to occur in the future, but a bare allegation that the harm will occur is insufficient. See Packard Elevator, 782 F.2d at 115. First, Plaintiff's assertion that he cannot file documents is greatly diminished by the fact that he successfully filed the Complaint and Motion in the instant case and states that he filed a complaint with the Ombudsman's office, all without use of his personal computer. To do so, Plaintiff borrowed another patient's computer. Thus, it does not appear that this harm has occurred in the past or is likely to occur in the future.

Second, many alternatives exist that enable Plaintiff to draft documents and communicate with outside agencies and his attorney without use of his personal computer. As has proven successful in the past, Plaintiff may borrow another patient's computer. If he is unable to do so, Plaintiff may use the Moose Lake Center's computer lab. Of course, he may also avail himself of the traditional methods of drafting documents, pen and paper. Likewise, the postal service, telephone and personal visits are continually available for Plaintiff to communicate with outside agencies or his attorney. Furthermore, staff have offered to assist Plaintiff in his legal work by retrieving files from Plaintiff's personal computer upon request. Plaintiff has not alleged that any of these alternative methods to using a personal computer are inadequate. In fact, the record indicates that Plaintiff has never made use of the computer lab or requested files from his computer. [Docket No. 14,

---

attorney in the future. Second, we presume the hindered communication is in the form of an inability to draft legal documents, not in denial of internet access as the center's computer policies prohibit possession of a modem that would allow internet communication. [Docket No. 14, Ex. 1].

Davis Aff., ¶¶ 10-11]. With so many adequate alternatives available, Plaintiff has simply failed to show that harm in the form of an inability to carry on litigation or communicate effectively is likely to occur.

Furthermore, Plaintiff's allegations do not amount to irreparable harm that would warrant immediate injunctive relief, but constitute only minor inconveniences to carrying on litigation. Cf. Davis, 104 F.3d at 207 ("inconveniences" suffered by a plaintiff prior to trial, in the form of scheduling conflicts and being forced to depend on others for help, do not amount to irreparable harm). While his legal work may be slightly more onerous without a personal computer, Plaintiff has not shown that he is unable to communicate or carry on litigation. With so many alternatives to a personal computer, Plaintiff has simply failed to demonstrate that any harm, nonetheless irreparable harm, will result if an injunction is not immediately issued, and he is required to await a determination of the merits of his claim at the conclusion of this litigation.

Because Plaintiff has clearly failed to prove irreparable harm, we need not consider the other Dataphase factors in deciding the Motion. Briefly, with respect to the public interest and the balancing of harms, we note that Defendants have a strong interest in administering a treatment program for committed sex offenders without undue interference by the courts. Defendants point out that the Supreme Court has cautioned against a court's interference with the administration of a prison. See Bell v. Wolfish, 441 U.S. 520, 547-548 (1979). We think the interference with a sex offender treatment program for committed individuals warrants equal caution. Ordering Defendants to return Plaintiff's computer and media will seriously undermine the administration of their treatment

program. This is especially apparent where Plaintiff alleges only minor inconveniences rather than actual, irreparable harm. As a result, the balance of harms and consideration of the public interest weighs heavily against issuing such an injunction.

**RECOMMENDATION**

For the reasons set forth above, it is recommended that Plaintiff's Motion for a Temporary Restraining Order or for a Preliminary Injunction [Docket No. 6] be denied.

Dated: March 6, 2001

JOHN M. MASON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **March 21, 2001** written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **March 21, 2001**.