UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

WAYNE NICOLAISON,

Plaintiff,

v.

FRANK R. MILZAK (Sic) and
RICK HARRY,

Defendants.

CIVIL NO. 00-2654 (RHK/JMM)

REPORT AND RECOMMENDATION

This matter is before the undersigned upon Defendants' Motion for Summary Judgment [Docket No. 29], upon Plaintiff's Memorandum and Affidavit in Support of Injunctive Relief [Docket Nos. 48 and 49] which we treat as a Motion for Injunctive Relief, and upon Plaintiff's Motion to Deny Defendants' Allegations for Renewed Motion for Summary Judgment [Docket No. 52]. Plaintiff appears pro se; David A. Rowley, Esq., Assistant Minnesota Attorney General, appears on behalf of Defendants. The matter was referred to the undersigned by the District Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B). The following Report and Recommendation is made upon the written submissions.

Upon the following Findings of Fact/Report, it is recommended as follows:

1. That Defendants' Motion for Summary Judgment [Docket No. 29] be granted.

2. That Plaintiff's Motions for Injunctive Relief [Docket Nos. 48 and 49] and to Deny Defendants' Allegations for Renewed Motion for Summary Judgment [Docket No. 52] be denied as moot.

FILED JUL 06 2001
RICHARD D. SLETTEN, CLERK

JUDGEMENT ENTERED ________

DEPUTY CLERK'S INITIALS ________

## FINDINGS OF FACT/REPORT

### Background

Plaintiff is a patient at the Minnesota Sexual Psychopathic Personality Treatment Center in Moose Lake, Minnesota ("the Moose Lake Center") as a result of having been involuntarily committed as a psychopathic personality in 1992. [Docket No. 13, Rowley Aff., Ex. 1, Warrant and Receipt of Commitment].[1] This case concerns the confiscation of Plaintiff's computer and related media for containing pornographic material. Plaintiff alleges that on October 9, 2000, Defendants "stole plaintiff's computer and accessories, valued in excess of $6,000." ¶ 5.

The Moose Lake Center has a policy that allows for the use and possession of personal computers so long as they are not used in a "non-therapeutic, inappropriate, or illegal manner." The policy allows staff to examine a patient's personal computers for prohibited and counter-therapeutic material. As a consequence of misuse, a patient's use and possession may be restricted for a specified length of time. [Docket No. 14, Harry Aff., Exs. 1 and 2, Computer and Media Guidelines].

Plaintiff was transferred to the Moose Lake Center from another treatment center on October 9, 2000. Upon entry, Plaintiff's personal property, which included a personal computer, was inspected for contraband and counter-therapeutic materials. Through inspection staff discovered numerous violations of the Moose Lake Center's computer and media policies. [Docket No. 15, Dyson Aff., ¶¶ 8, 16]. As a result, Plaintiff's personal computer privileges were revoked for six months.

---

[1] The Moose Lake Center is a secure facility, established under Minnesota Statute § 246B.02 for the treatment of committed psychopathic persons.

On December 7, 2000 Plaintiff filed a Complaint alleging that Defendants, employees of the treatment center, violated his civil rights under 42 U.S.C. § 1983 by depriving him of his personal property without due process of law, contrary to the Fourteenth Amendment. Plaintiff also alleges violations of his First Amendment rights and his Fifth Amendment right to be free from double jeopardy. [Docket No. 1, ¶¶ 5, 9]. Plaintiff sues Defendants in their official and individual capacities.

In his prayer for relief, Plaintiff seeks $100,000.00 in compensatory damages and $100,000.00 in punitive damages. Plaintiff also seeks an Order declaring that Defendants have acted without authority and an Order directing Defendants to provide a list of all confiscated patients' property and to reimburse those patients for lost, stolen or destroyed property. [Docket No. 1, p. 4].

Defendants have moved the Court for summary judgment in their favor. [Docket No. 29]. The parties have submitted affidavits and memoranda in this regard. [Docket Nos. 30-37, 42-45]. Plaintiff filed a "Motion that Defendants Motion for Summary Judgment be Denied" [Docket No. 42] along with a supporting Memorandum, Affidavits and Exhibits which we construe together as a response in opposition to Defendants' Motion for Summary Judgment.

Plaintiff is also before this Court seeking preliminary injunctive relief for a second time. Plaintiff did not file a notice of motion and motion in this regard, but instead filed a Memorandum and Affidavit in support of preliminary injunctive relief [Docket Nos. 48 and 49] which we construe as a Motion for preliminary injunctive relief. Plaintiff's initial Motion for preliminary injunctive relief [Docket No. 6] was denied by Order dated April 18,

2001, adopting the Report and Recommendation of this Court dated March 6, 2001. [Docket Nos. 18 and 46].

## I. SUMMARY JUDGMENT STANDARD

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is appropriate if the materials submitted in support of the motion "show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The standards for considering a Motion for Summary Judgment have their foundation in the provisions of Rule 56 of the Federal Rules of Civil Procedure, as interpreted in a trilogy of cases decided by the Supreme Court in 1986. In Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986), the Supreme Court described the importance of the summary judgment procedure:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' . . . Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

On a Motion for Summary Judgment, the moving party has the initial burden of establishing the "material facts" and demonstrating that there is not a "genuine" dispute as to whether those material facts are true. It is possible to satisfy that burden without filing Affidavits. Celotex Corp., 477 U.S. at 322-323. To defeat the motion, the opposing party must then establish that there is a "genuine" issue as to material facts. "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita

Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Fed. R. Civ. P. 56(e).

The Court is guided in determining issues of materiality of the facts and the genuineness of the dispute by additional standards. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co., 475 U.S. at 586. The Court considers the Motion for Summary Judgment based upon the materials presented in connection with the Motion. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The Court's inquiry should be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251.

These principles have been explained and applied by the Court of Appeals for the Eighth Circuit in numerous cases. E.g., Hartnagel v. Norman, 953 F.2d 394, 395-396 (8th Cir. 1992); Fischer v. NWA, Inc., 883 F.2d 594, 598 (8th Cir. 1989); cert. denied, 495 U.S. 947 (1990). Health Care Equal. Comm. of the Iowa Chiropractic Soc'y v. Iowa Medical Soc'y, 851 F.2d 1020, 1031-1032 (8th Cir. 1988). The standard also applies to pro se claims. See Quam v. Minnehaha County Jail, 821 F.2d 522, 522 (8th Cir. 1987) (pro se prisoner plaintiff is entitled to the benefit of a liberal construction of his pleadings, but Rule 56 remains applicable and summary judgment may be entered regardless of pro se status).

## II. THIS COURT LACKS SUBJECT MATTER JURISDICTION TO CONSIDER CLAIMS AGAINST STATE OFFICIALS ACTING IN THEIR OFFICIAL CAPACITY, AND CLAIMS ALLEGING VIOLATIONS OF STATE LAW.

### A. Immunity for Actions Undertaken in Defendants' Official Capacities

Plaintiff alleges claims against Defendants for actions taken in their official and individual capacities. To the extent Plaintiff seeks damages for Defendants' official actions, Defendants are entitled to immunity under the Eleventh Amendment.

A lawsuit against a state official for actions undertaken in his or her official capacity is construed as a lawsuit against the state for Eleventh Amendment purposes. See Will v. Michigan Dept. of State Police, 491 U.S. 58, 70 (1989)("a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office"); Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 464 (1945)(Eleventh Amendment bars a suit against state officials when "the state is the real, substantial party in interest"). Unless a state has waived its sovereign immunity, the Eleventh Amendment prohibits federal courts from exercising jurisdiction over claims for monetary damages against a state. Edelman v. Jordan, 415 U.S. 651, 663 (1974)("a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment"). Accordingly, as a matter of law, this Court lacks jurisdiction over Plaintiff's claims for monetary relief against Defendants acting in their official capacities.

### B. This Court Lacks Subject Matter Jurisdiction to Hear Claims Alleging Violations of Minnesota Law.

Plaintiff alleges that Defendants' actions constitute "theft", as well as "deliberate indifference" to his "statutory rights in civil confinement." [Docket No. 1, ¶¶ 5,

10, 11]. Although it is not exactly clear to what statutory rights Plaintiff refers, elsewhere in the Statement of the Claim portion of his Complaint Plaintiff makes reference his rights retained under the Patients' Bill of Rights, Minn. Stat. § 144.651, Subds. 22, 24-26. Presumably, he is alleging a violation of this Minnesota statute as well as the criminal statute against theft, see Minn. Stat. § 609.52.

To the extent Plaintiff asks this Court to order state officials to comply with state law, this Court lacks jurisdiction to grant such relief. See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 117 (1984)(a federal suit against state officials on the basis of state law contravenes the Eleventh Amendment); see also Fond du Lac Band of Chippewa Indians v. Carlson, 68 F.3d 253, 256 (8th Cir. 1995)(Eleventh Amendment bars lawsuit seeking to enjoin violations of state law). In addition, Plaintiff has brought his Complaint pursuant to 42 U.S.C. § 1983, which provides relief only for the deprivation of federal constitutional or statutory rights. Section 1983 is not available to vindicate violations of state laws. See Myers v. Becker County, 833 F.Supp. 1424, 1430 (D. Minn. 1993). Therefore Defendants are entitled to summary judgment in their favor with respect to any and all of Plaintiff's claims alleging violations of state law.

## III. AS A MATTER OF LAW, PLAINTIFF HAS NOT ALLEGED A VIOLATION OF A FEDERAL CONSTITUTIONAL RIGHT.

Plaintiff alleges violations of three Constitutional rights that are actionable under 42 U.S.C. § 1983, his right to due process under the Fourteenth Amendment, his right to free speech under the First Amendment, and his right against double jeopardy under the Fifth Amendment.

**A. Plaintiff Has No Property Interest in His Computer So as to Invoke Due Process Protections.**

A due process claim "is cognizable only if there is a recognized liberty or property interest at stake." Johnson v. City of Minneapolis, 152 F.3d 859, 861 (8th Cir.1998). For a property interest to arise, a plaintiff must have more than "mere subjective expectancy." Batra v. Board of Regents of the Univ. of Neb., 79 F.3d 717, 720 (8th Cir.1996). "Property interests are created by existing rules or understandings that stem from an independent source, such as state law." Id. But whether the interest created by state law rises to the level of a protected property interest is determined by federal constitutional. Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 9, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978).

The Eighth Circuit uses a two-part test to determine whether a state statute or policy is sufficient to create a constitutionally protected property interest.

> A statute, regulation, or official policy pronouncement will give rise to a protected property interest only where (1) it contains particularized substantive standards or criteria that guide the decisionmakers, and (2) it uses mandatory language requiring the decisionmakers to act in a certain way, thus limiting the official's discretion.

Jennings v. Lombardi, 70 F.3d 994, 995-996 (8th Cir. 1995)(citing Craft v. Wipf, 836 F.2d 412, 417 (8th Cir.1987)). "Where the statute or policy is only procedural, or where it grants to the decisionmaker discretionary authority in implementing it, a protected property interest is not created." Id.

Plaintiff cites Minn. Stat. § 144.651, Patients Bill of Rights, for the proposition that he has a protected property interest in his computer, so as to invoke due process protections. That statute provides in relevant part as follows:

> Subd. 22. Personal property. Patients and residents may retain and use their personal clothing and possessions as space permits, unless to do so would infringe upon rights of other patients or residents, and unless medically or programmatically contraindicated for documented medical, safety, or programmatic reasons.

Minn. Stat. § 144.651. Applying the two-part test to this statute, it is clear that Plaintiff does not have a protected property interest in his computer. The statute does not use mandatory language, but merely provides that "residents may retain and use their personal belongings." (emphasis added). The permissive "may" indicates that plaintiff does not have an entitlement to possess all of his property. In addition, the statute enables staff to place limitations on a patient's possession of personal property. Residents may possess their belongings only on condition that they do not infringe on others' rights and on condition that the possessions are not medically or programmatically contraindicated. The statute does not mandate standards or criteria to guide the decisionmaker, instead, Program staff have discretion to determine whether such infringement or contraindication occurs.

Likewise, the Moose Lake Center's computer and media policies do not create an expectancy in the possession of his personal computer. The policies allow for the use and possession of personal computers so long as they are not used in a "non-therapeutic, inappropriate, or illegal manner." The policy allows staff to examine a patient's personal computers for prohibited and counter-therapeutic material. As a consequence of misuse, a patient's use and possession may be restricted for a specified length of time. [Docket No. 14, Harry Aff., Exs. 1 and 2, Computer and Media Guidelines]. Plaintiff has

not established that he has a constitutionally protected property interest in the possession of his personal computer, so as to invoke due process protections.

**B. Plaintiff Does Not Have a First Amendment Right to Possess a Personal Computer.**

The First Amendment protects citizens from "laws abridging the freedom of speech." U.S. Const. Amend I. However, the confiscation of Plaintiff's computer does not impinge on Plaintiff's ability to speak so as to invoke the First Amendment. In order for conduct to be categorized as speech invoking First Amendment protections, Plaintiff must establish that the conduct is intended to communicate. See United States v. O'Brien, 391 U.S. 367, 376 (1968). Several courts have held that regulations limiting the manner in which a prisoner may communicate, but not the content of the communication, do not regulate "speech" so as to invoke First Amendment protections. See Taylor v. Coughlin, 29 F.3d 39, 40 (2nd Cir. 1994); Sands v. Lewis, 886 F.2d 1166, 1172 (9th Cir. 1989)(prison regulations banning the use of high-memory typewriters do not violate First Amendment).

The fact that Plaintiff is an involuntarily committed sexual psychopath rather than a prisoner does not alter the analysis. In both situations, the First Amendment is not implicated as the government action at issue does not regulate speech, but only the manner in which the individual may speak. In Sands, the Ninth Circuit stated that "free speech rights were not impinged at all" by the regulation prohibiting electronic typewriters. Sands, 886 F.2d at 1172. As such, the court did not need to enter into First Amendment analysis, determining the constitutionality of the regulation under the test prescribed by the Supreme Court. See Procunier v. Martinez, 416 U.S. 396 (1974); Turner v. Safley, 482 U.S. 78 (1987); Thornburgh v. Abbott, 490 U.S. 401 (1989). Instead, the court denied relief

on the grounds that the First Amendment was not implicated. It stated: "since the prison's rule on typewriter memory capability does not involve censoring the content of communications made by Sands, there are no grounds upon which Sands can argue that his first amendment rights were violated." Sands, 886 F.2d at 1171.

Likewise, Plaintiff's free speech rights are not impinged. The use of Plaintiff's personal computer, like a typewriter, is not speech, but is only a means of recording and producing speech. We note that Plaintiff has not been denied the use of computers in general, but only the use of his own computer. Plaintiff is free to use computers in the Moose Lake Center's computer lab, as well as the computer's of other patients and is also free to use paper, pens, and other traditional forms of communication.

**C. Defendants Did Not Violate Plaintiff's Fifth Amendment Right Against Double Jeopardy.**

The Double Jeopardy Clause provides: "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. Although generally understood to preclude a second prosecution for the same offense, the Supreme Court has also interpreted this prohibition to prevent the State from "punishing twice, or attempting a second time to punish criminally, for the same offense." Witte v. United States, 515 U.S. 389, 396 (1995).

Plaintiff claims that confiscating his computer for six months constitutes a second punishment in violation of the prohibition against double jeopardy. His claim must fail as a matter of law, as Plaintiff's commitment to the Moose Lake Center does not constitute punishment. Civil commitment of sex offenders for treatment does not constitute a violation of double jeopardy. See Kansas v. Hendricks, 521 U.S. 346, 369

(1997)("[a]lthough the civil commitment scheme at issue here does involve an affirmative restraint, 'the mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment'")(citing United States v. Salerno, 481 U.S. 739, 746 (1987). Since Plaintiff's civil commitment does not constitute punishment for purposes of double jeopardy analysis, the implementation of computer use policies while committed cannot constitute a second punishment for the same act.

**RECOMMENDATION**

For the reasons set forth above, it is recommended as follows:

1. That Defendants' Motion for Summary Judgment [Docket No. 29] be granted.

2. That Plaintiff's Motions for Injunctive Relief [Docket Nos. 48 and 49] and to Deny Defendants' Allegations for Renewed Motion for Summary Judgment [Docket No. 52] be denied as moot.

Dated: July 6, 2001

JOHN M. MASON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **July 23, 2001** written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.